485 A.2d 678

**CARDON INVESTMENTS**

v.

**TOWN OF NEW MARKET et al.**

**No. 149, Sept. Term, 1983.**

Court of Appeals of Maryland.

Dec. 31, 1984.

---

Neil Vincent Wake, Phoenix, Ariz., and John C. Murphy, Baltimore (Harry T. DeMoll, Frederick, on brief), for appellant.

Thomas P. Smith, County Atty., Michael O. Connaughton, Deputy County Atty., and Steven M. Gilbert, Associate County Atty., Upper Marlboro, on brief, amicus curiae for Prince George's County, Maryland.

Judith A. Armold, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee, Md. Dept. of State Planning.

Peyton Paul Phillips, Frederick, for appellee, The Town of New Market.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, DAVIDSON *, RODOWSKY, COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

COUCH, Judge.

This appeal concerns the judicial review of a zoning decision in Frederick County, near the town of New Market. The local zoning board granted an application for rezoning of the subject property and the Circuit Court for Frederick County reversed the rezoning. The Court of Special Appeals affirmed the circuit court. *Cardon Inv's. v. New Market,* 55 Md.App. 573, 466 A.2d 504 (1983). We granted certiorari to determine questions of public importance; we shall affirm the decision of the Court of Special Appeals.

While the appellant has raised six issues for our consideration,[1] we shall recast those issues into three. They are as follows:

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but died prior to the adoption of the opinion by the Court.

1. Those issues are:
   I. Frederick County did not adopt a comprehensive zoning plan in 1977.
   II. Section 1–19–67 of the Frederick Code which allows change to be measured from 1959 cannot be invalidated without invalidating the entire ordinance.
   III. The rezoning cannot be declared invalid for failure to demonstrate change from 1977 or 1971 when the validity of the provision measuring change from 1959 was not raised in the administrative proceeding.
   IV. The validity of the zoning text may not be raised in a piecemeal map amendment.
   V. It was not necessary to show change from the 1971 piecemeal map amendment or from the 1977 text adoption when a use permitted (or not prohibited) by the 1971 and 1977 zoning actions had been prohibited by a subsequent text amendment.
   VI. There was sufficient evidence of change in the character of the neighborhood to authorize the rezoning from General Commercial to Highway Service.

1) Whether the State Department of Planning may raise a new issue after intervening in an administrative appeal;

2) Whether comprehensive zoning occurred in Frederick County in 1977;

3) If comprehensive zoning occurred, was there sufficient evidence of change so as to render the decision to rezone fairly debatable.

## I

### *The Facts*

Zoning appeals usually involve lengthy and complex statements of fact, and this appeal is no exception to the rule. In order to avoid repetition of what has been well stated before, reference is made to the chronological recitation of facts prepared by Judge Bishop in *Cardon, supra,* 55 Md.App. at 575–78, 466 A.2d at 507–08.

As a general background to this appeal, we note that on March 2, 1982, the County Commissioners of Frederick County rezoned the land owned by the appellant, Cardon Investments (Cardon), from General Commercial to Highway Service. This rezoning was based upon a determination that there was substantial change in the neighborhood, when the change was measured from 1959, the date of the original comprehensive zoning of Frederick County. The use of this date was mandated by Frederick County Code Section 1–19–67 (1977) [2], which designated 1959 as the date for measuring change.

---

**2.** Section 1–19–67 states:
   "§ 1–19–67. Legislative intent for change or mistake criteria for rezoning.
   It is the legislative intent of the board of county commissioners that any changes or mistakes required to be shown for rezoning subsequent to January 24, 1977, shall not be from such date, but changes in the character of the neighborhood or mistake in the existing zoning may be shown and considered as evidence by the board of county commissioners from the date of the original adoption of a zoning ordinance on May 11, 1959, or from the date of

The rezoning would have permitted Cardon to build a truckstop on property located within view of the residents of the town of New Market.  The town and its residents, the appellees before us, appealed the rezoning to the Circuit Court for Frederick County.  The Department of State Planning (the Department) intervened pursuant to Maryland Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Article 88C, § 2(r).[3]

In the Statement of Position filed by the Department with their Motion to Intervene, the Department contended that 1959, the date used by the County Commissioners to measure change, was the wrong date to use.  At the hearing in circuit court the Department explained its contention.  It argued that change should be measured from either 1971 (prior piecemeal zoning) or 1977 (prior zoning map update).  At the hearing the Department stated:

"the change or mistake rule as it has been developed in case law is binding on all local jurisdiction [sic] that exercise zoning power under Article 66B, and that includes Frederick County.  The County has no authority to establish a different rule for Frederick County.  In a

---

adoption of any future comprehensive regional zoning map amendment."

**3.**  Section 2(r) states:

"(r) Intervention in administrative and judicial, or other proceeding.—Have the right and authority to intervene in and become a party to any administrative, judicial, or other proceeding in this State concerning land use, development or construction.  Upon intervention, the Department shall have standing and all rights of a party in interest or aggrieved party, including all rights to apply for judicial review and appeal.  In addition, it may file a formal statement of environmental or economic impact expressing the views of the Department and any other unit of the State government.  The right of intervention in any administrative, judicial or other proceeding in this State may be exercised only in accordance with applicable rules of procedure and law as they relate to the proceeding.  The Department and the governing bodies of the local subdivisions shall establish procedures for notification of the Department of applications for zoning, permits, or authority to use, develop, or construct upon land which involve more than a local impact and is of substantial State or regional interest."

number of cases the Court of Appeals has declared that the zoning power of local jurisdictions is limited by the terms of State Enabling Law. A recent case on point is *Harper Island Marina v. County Commissioners of Calvert County,* [Harbor] that's 286 Maryland 303 [407 A.2d 738] a 1979 case. The Court has also suggested, for example, in the *Woodlawn [A]rea Citizens Association* case, which is cited in the State's memorandum, that County Commissioners when they engaged in piecemeal rezoning are analogous to administrative bodies and that they must follow enabling authority and procedures. Section 1-19-67 of the County Zoning Ordinance purports to establish a rule that conflicts with Article 66B, Section 4.05A, and the change of [sic] mistake case law. The Section would take away the presumption of correctness from any zoning change that has occurred in Frederick County since 1959, including in this case the 1971 and 1977 reclassifications of the Cardon property. The State maintains that the Section is invalid and not binding in this case."

The circuit court agreed and recognized 1977 as the date from which to measure change. Working from that date, the court found insufficient evidence of change so as to warrant rezoning. The decision to rezone was accordingly reversed.

The Court of Special Appeals affirmed, but on slightly different grounds. Judge Bishop, writing for the court, determined that the 1977 zoning map update was, as a matter of law, a comprehensive rezoning. The Court of Special Appeals held that since use of the 1959 date was an erroneous conception of law, the issue was properly reviewed by the circuit court, even though it was not raised at the administrative level. The Court of Special Appeals then affirmed the circuit court's finding of insufficient evidence to warrant rezoning. We begin by addressing the issue of the Department's intervention and its objections to the validity of Frederick County Code § 1-19-67.

## II

### *The Department's Intervention and Objection*

■ Cardon argues that the Department may not intervene and raise an issue not addressed at the administrative level. We have previously held that the Department may intervene in a zoning appeal, as long as the intervention is timely. *Dep't of State Planning v. Mayor of Hagerstown*, 288 Md. 9, 415 A.2d 296 (1980). The parties agree that the intervention was timely but disagree as to the Department's right to raise a new issue on administrative appeal.

Section 2(r), quoted in footnote 3, gives the Department the "standing and all rights of a party in interest or aggrieved party ...", but these rights "may be exercised only in accordance with applicable rules of procedure and law as they relate to the proceeding." The question, then, is whether a party in interest or an aggrieved party can attack the validity of a zoning ordinance in the appeal of a zoning decision which relied in part upon that ordinance. We hold they may.

Article 66B, entitled Zoning and Planning, delineates the statutory law in zoning matters. Article 66B addresses, in separate subtitles, Zoning in Baltimore City (subtitle 2), and General Development Regulations and Zoning (subtitle 4). Section 4.08(a) establishes the right of an aggrieved party to appeal to the circuit court of the county in which the zoning decision was made. Similarly, Section 2.09(a) establishes the right of an aggrieved party in Baltimore City to appeal a zoning decision to the Circuit Court for Baltimore City.[4]

---

**4.** The language of the two sections is identical; only the order of the clauses differs:

"§ 2.09. *Appeals to courts.*

(a) *Who may appeal; procedure.*—Any person or persons, or any taxpayer, or any officer, department, board, bureau of the jurisdiction, jointly or severally aggrieved by any decision of the board of appeals, or by a zoning action by the local legislative body, may appeal the same to the Circuit Court for Baltimore City. Such appeal shall be taken according to the Maryland Rules as set forth

In interpreting § 2.09, this Court has held that on appeal a party may attack the validity of a local zoning ordinance even though the issue was not raised below. *Ellicott v. Mayor of Baltimore*, 180 Md. 176, 23 A.2d 649 (1942). In *Ellicott*, local residents protested a variance granted by the Baltimore City zoning board, and then, on appeal to Baltimore City Superior Court, they attacked the validity of the ordinance which authorized the variance. The appellees argued that an attack on the statute must be raised by seeking an injunction in equity. Chief Judge Bond, writing for the Court, disapproved of this theory, noting that if separate action was required:

> "the design of the statute and the ordinance would be departed from. Some persons interested in a municipal development, who might feel aggrieved within the meaning of the law, and are intended to be heard, taxpayers and others besides neighboring owners, for instance, could not contest the validity of the variation at all because they would not be able to show the peculiar injury necessary [for an injunctive action]. *Bauernschmidt v. Standard Oil Co.*, [153 Md. 647, 139 A. 531 (1927)], *supra*. And questions of validity of the variation and of iregularities in the Board's action could not be heard together in one proceeding. The statute and ordinance are still capable of a construction that will permit raising the question of validity on the appeal; it is convenient for the court on appeal to hear questions as the original ordinance contemplated; to separate the questions we should be following strict logic to impose a

in Chapter 1100 Subtitle B. Nothing in this subsection shall change the existing standards for review of any zoning action."

"§ 4.08. *Appeals to courts.*

(a) *Who may appeal; procedure.*—Any person or persons, jointly or severally, aggrieved by any decision of the board of appeals, or by a zoning action by the local legislative body, or any taxpayer, or any officer, department, board, bureau of the jurisdiction, may appeal the same to the circuit court of the county. Such appeal shall be taken according to the Maryland Rules as set forth in Chapter 1100, Subtitle B. Nothing in this subsection shall change the existing standards for review of any zoning action."

disadvantageous practice; and that, we have concluded, should not be done. The contest of the varying ordinance may be heard on the appeal to the court, although not before the Board."

*Id.*, 180 Md. at 181, 23 A.2d at 651. *See also Hartman v. Prince George's County* 264 Md. 320, 324, 286 A.2d 88, 90 (1972); *Poe v. Baltimore*, 241 Md. 303, 307, 216 A.2d 707, 711 (1966); and *Mayor of Baltimore v. Seabolt*, 210 Md. 199, 206, 123 A.2d 207, 212 (1956).

Because of the similar language contained in § 2.09(a) and § 4.08(a) of Article 66B, we hold, in accordance with *Ellicott*, that objections to the validity of a local zoning ordinance may be raised for the first time on administrative appeal.

▪ Cardon also contends that the validity of a comprehensive rezoning is an issue which cannot be raised in an administrative appeal pursuant to Md.Ann.Code (1957, 1983 Repl.Vol.), Art. 66B, § 4.08(a). In *Bd. of County Comm'rs v. Stephans*, 286 Md. 384, 408 A.2d 1017 (1979), we so held, and we reaffirm that holding today. While Cardon has correctly stated the law, its error lies in applying that law to these facts. In this instance, the validity of comprehensive rezoning was not attacked; the attack was made upon the validity of a local zoning ordinance. The Circuit Court, however, determined that, despite the Commissioners' expressed intent, comprehensive rezoning had occurred. This is not the same as a procedure in which the comprehensive plan itself is directly attacked. Therefore, Cardon's argument has no merit.

### III

#### *Comprehensive Rezoning*

Having established that the Department may intervene and raise the validity of the local zoning ordinance, we next review the ordinance itself. The Department argues that § 1–19–67 of the Frederick County Code is invalid because it conflicts with the State enabling law, Md.Code (1957, 1983

Repl.Vol.), Art. 66B, § 4.05(a), and the precedents established by this Court in interpreting that law. Section 1–19–67 was enacted in 1977 at the same time that the Commission repealed and re-enacted the zoning ordinances for the entire county. The repeal and re-enactment has been characterized by Cardon as a zoning map update and by the Department as a comprehensive rezoning.

Section 1–19–67 states that change must be measured from 1959. See footnote 2 of this opinion. By its express language, then, the Frederick County Code did not limit the Commissioners to considering change or mistake only from 1977, the date of the new zoning ordinance.

■ The State enabling law, § 4.05(a), states in relevant part:

"Where the purpose and effect of the proposed amendment is to change the zoning classification, the local legislative body shall make findings of fact in each specific case including, but not limited to, the following matters: population change, availability of public facilities, present and future transportation patterns, compatability with existing and proposed development for the area, the recommendation of the planning commission, and the relationship of such proposed amendment to the jurisdiction's plan; *and may grant the amendment based upon a finding that there was a substantial change in the character of the neighborhood where the property is located or that there was a mistake in the existing zoning classification.*" [Emphasis added.]

We have held that the change or mistake rule, codified at § 4.05(a), means that a strong presumption of correctness attaches to original zoning and to comprehensive rezoning. *See, e.g., Mayor of Rockville v. Henley,* 268 Md. 469, 302 A.2d 45 (1973); *Chevy Chase Village v. Montgomery County,* 258 Md. 27, 264 A.2d 861 (1970).[5]

---

5.  With regard to comprehensive rezoning, we have acknowledged that changes prior to that zoning need not be wholly disregarded, *Somerset*

The question, then, is whether the 1977 action was a comprehensive rezoning to which a strong presumption of correctness would normally attach. In determining this issue, we turn to a recent opinion written for the Court by the late Judge Davidson, and relied upon below by Judge Bishop. In *Mraz v. County Comm'rs,* 291 Md. 81, 88–89, 433 A.2d 771, 776 (1981), Judge Davidson listed the criteria for comprehensive rezoning:

"The indicia of 'comprehensiveness' in zoning are well established. A comprehensive zoning or rezoning must be well thought out, the product of careful consideration and extensive study, and based upon considerations concerning the common needs of the particular area. It must be designed to control and direct the use of land and buildings according to present and planned future conditions, to accomplish as far as possible the most appropriate uses of land consistent with the public interest and the safeguarding of the interests of the individual property owners. Other characteristics of comprehensiveness may be found in the fact that the zoning or rezoning applies to or covers a substantial or wide geographical area, that it regulates all uses, and that it covers all of the usual factors of land utilization: height, area and use. The fact that few changes in zoning are made does not affect the comprehensive nature of the zoning or rezoning. *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 702, 707, 376 A.2d 483, 492–93, 495 (1977), *cert. denied sub nom. Funger v. Montgomery County,* 434 U.S. 1067, 98 S.Ct. 1245 [, 55 L.Ed.2d 769] (1978)."

---

*v. Montgomery County,* 229 Md. 42, 181 A.2d 671 (1962); evidence of prior changes, however, does not compel the legislature to grant the rezoning, *Mayor of Rockville v. Henley, supra,* 268 Md. at 473, 302 A.2d at 48.

■ Applying the indicia in *Mraz* to the language of the Commission in its enacting legislation,[6] it is clear that the 1977 rezoning is comprehensive. The enacting legislation states that the ordinance is the result of over one year of studies, workshops and public hearings. These hearings and workshops were open to all citizens and were conducted in the smaller regional planning areas of the county. Following that action, approximately fourteen more public hearings were held.[7] Thus the new zoning ordinance was well thought out, carefully considered, and extensively studied. In addition, the common needs of a particular area were presumably addressed by the regional hearings and workshops.

The Commissioners expressly stated that in the Conservation District (approximately 25% of the county's land), "[n]ew provisions for commercial and industrial zones have also been added to reflect the *present and future needs* of the County for these type uses" [emphasis added]. This, we believe, corresponds to another *Mraz* criterion: the control and direction of the use of land and buildings according to present and planned future conditions. Intertwined with control is the issue of whether the use of the land is most appropriate to the public interest. The Commissioners showed particular concern for the public interest in their efforts to check the expanding urban sprawl. They stated their fears succinctly:

"[T]he County map and landscape have been dotted with ... subdivisions, too many being placed in areas where the public works, utilities, and service amenities do not exist to provide needed facilities to the citizens. This has resulted in what has been termed 'urban sprawl'. These developments, tenuously served by wells and septic tanks, on unpaved roads, where schools, fire, police, li-

---

6. We refer to Ordinance No. 77–1–78 of the Frederick County Code, entitled "An ordinance to repeal and re-enact with amendments, Chapter 40, titled "Zoning" of the Frederick County Code".

7. These hearings included 11 hearings held by the Planning Commission and 3 days of hearings held by the County Commissioners.

brary, parks and other public facilities are not readily available, have placed a demand on the County tax base to provide these services which cannot economically and efficiently be provided under the previous zoning circumstances, and require a change which is provided in this Ordinance."

Accordingly, the Commissioners enacted § 40–62 of the Frederick County Code to regulate growth of subdivisions in Frederick County; in so doing, the Commissioners controlled the use of land in a manner most appropriate to the public interest.

Comprehensive zoning may in part be discerned from the amount of land the zoning ordinance encompasses. Here it is clear that the 1977 legislation encompassed the entire county. That it regulates all uses and covers the usual factors of height, area and use is clear from Sections 40–61.A and .B, which list all the possible uses of land in the county, from antique shops to zoological gardens. Presumably, height, area and use are taken into account in the development of these regulations.

Therefore, we hold that the 1977 zoning ordinance enacted by the County Commissioners of Frederick County is a comprehensive rezoning, and accordingly § 1–19–67 of the Frederick County Code is invalid.

## IV

### Sufficient Evidence of Change

Cardon next argues that the Court of Special Appeals and the Circuit Court erred in measuring change from 1971 when the 1981 amendment was a substantially different piece of legislation. Inasmuch as we have held that the 1977 action was comprehensive, the 1971 action becomes unimportant. See footnote 4 of this opinion. Accordingly, we need not address this issue. All we need consider is whether there has been sufficient evidence of change in the neighborhood from 1977 on so as to render the Commissioners' decision to rezone from General Commercial to High-

way Service a fairly debatable one. *Mayor of Rockville v. Stone,* 271 Md. 655, 661, 319 A.2d 536 (1974).

In order to show change in the neighborhood sufficient to make the issue fairly debatable, Cardon must prove:

"(a) what area reasonably constituted the 'neighborhood' of the subject property, (b) the changes which have occurred in that neighborhood since the comprehensive [or prior piecemeal] rezoning, and (c) that these changes resulted in a change in the character of the neighborhood. [Citations omitted; brackets in the original.]"

*Id.,* 271 Md. at 661, 319 A.2d at 540. Since we hold there has been insufficient evidence of change in the character of the neighborhood (the third element) we need not address the first two elements.

In marshaling evidence to meet its burden of proof, Cardon relies upon the increase in traffic flow in the designated neighborhood. In addition, it cites rezonings in the neighborhood. These rezonings were observed and reported by one of Cardon's experts by means of a windshield survey. Cardon also relies upon the installation and expansion of utilities in the neighborhood.

This evidence was duly noted by the circuit court judge, and his review of this issue is as follows:

"The highway improvements are those that have been, by nature and scope and location, those that were long contemplated. The completion in 1974 seems to be of no telling consequences in terms of the decision in 1971 to place this in the commercial category and the availability of adequate sewer facilities from a review of the record shows nothing significant other than that it ought to be able to take care of the property."

Thus we hold there was insufficient evidence of change in the character of the neighborhood, and therefore the issue of change was not fairly debatable. *See Chatham Corp. v. Beltram,* 252 Md. 578, 251 A.2d 1 (1969) (insufficient evidence of change so as to make the issue fairly debatable). While there may be some merit in Cardon's argument that a

final decision without remand for the taking of evidence of change from 1977 on lacks fairness, we agree with the Court of Special Appeals that Cardon had the motive and opportunity to present all evidence of change at the hearing. We believe that if more evidence of change could have been found, the windshield survey of Cardon's expert would have so indicated. Thus we believe a remand would be fruitless. *See Chevy Chase Village v. Montgomery County, supra,* 258 Md. at 40, 264 A.2d at 867–68.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY APPELLANT, CARDON INVESTMENTS.